UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 2:04-CR-58 |
| | ) | |
| BILLY WAYNE WHITT | ) | |

REPORT AND RECOMMENDATION

The defendant has filed a Motion to Suppress his statements given to law enforcement officers on April 29, 2004 [Doc. 29], arguing that these statements were "coerced" or involuntary. That motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on August 4, 2005.

In his motion, defendant argues that he was arrested at 3:31 p.m. on April 23, 2004, during which time he was undergoing "drug treatment." He further argues that he was promised leniency in any state court prosecution, as a result of which he waived his *Miranda* rights on April 29, 2004, and thereafter provided incriminating statements to law enforcement officers. The only evidence presented with respect to this motion was the testimony of Mark McElhaney, a Detective of the Morristown Police Department, and Andy Dossett, Chief of the Bean Station Police Department. The defendant presented no evidence.

Defendant is charged in a twelve-count indictment which includes, among other things, a charge that he robbed the Rite Aid Pharmacy in Bean Station, Tennessee, on January 25, 2004, and Howard's Pharmacy in Morristown, Tennessee, on March 30, 2004, and that he brandished a handgun during the course of both robberies. The Howard's Pharmacy robbery was caught on videotape and, by reason of thorough police work, observant witnesses, and perhaps a small amount of luck, the defendant's parole officer viewed the videotape of the robbery and positively identified defendant as one of the perpetrators. Moreover, Cora Whitt, defendant's ex-wife and in whose home defendant was then residing, positively identified defendant as the robber after viewing the videotape. As a result of these unequivocal identifications of defendant as the robber, Detective McElhaney procured a warrant for defendant's arrest and took him into custody on April 23, 2004. Detective McElhaney advised defendant of his constitutional rights, and defendant signed a written waiver of same (Exhibit 5). The statement that defendant gave on that occasion was "self-serving" to the extent that defendant essentially denied any knowledge of the Howard's Pharmacy robbery.

On April 29, 2004, Chief Andy Dossett of the Bean Station Police Department received information from a Morristown police officer that suggested that defendant was connected to the robbery of the Rite Aid Pharmacy in Bean Station and that defendant was willing to talk to Chief Dossett. Chief Dossett traveled to the Hamblen County Jail and there interviewed defendant. Chief Dossett advised defendant of his constitutional rights and defendant executed a written waiver of same (Exhibit 9).

Defendant thereupon confessed to the robbery of the Rite Aid Pharmacy in Bean Station on January 25, 2004. No recording was made of this confession, but Chief Dossett simultaneously wrote down what defendant was saying, or at least a reasonably accurate paraphrase of defendant's statements, according to Chief Dossett. However, when this statement as written by Chief Dossett was presented to defendant for his signature, defendant declined to sign it.

Shortly thereafter, defendant was re-interviewed by Detective McElhaney of the Morristown Police Department. Detective McElhaney procured yet another written waiver of defendant's *Miranda* rights from defendant (Exhibit 6). Detective McElhaney obviously had better luck with defendant; defendant signed a written statement confessing to the robbery of Howard's Pharmacy on March 30, 2004 (Exhibit 7). This incriminating statement also was audio taped (Exhibit 3). In that written statement, he not only confesses to the Howard's Pharmacy robbery, he also refers to another robbery, presumably the robbery of Mike's Pharmacy in Morristown, for which defendant was previously convicted.

Although defendant presented no evidence with respect to his motion to suppress his statements, it can be inferred from the questions he asked Detective McElhaney and Chief Dossett that he claims his statements were involuntary because he was addicted to Oxycontin and was suffering withdrawal. Defendant's motion also asserts that defendant was promised leniency in any state court prosecution and, in somewhat the same vein, defense counsel's questions to Detective McElhaney suggest

3

that defendant was promised that if he confessed he would not be prosecuted in federal court. By way of emphasis, it is again noted that defendant did not testify, nor did he call any other witnesses to substantiate his theories.

The Court has listened to the recording of defendant's statements to Detective McElhaney on April 29 [Exhibit 3]. From that statement, it is reasonable to conclude that defendant indeed was addicted to Oxycontin, that he was in withdrawal, and that he wanted to undergo a regimen of detoxification. But it is also abundantly clear from that tape that he was promised *nothing* with respect to either leniency or prosecution in federal court, and that his immediate physical needs were promptly attended to by the police officers. Indeed, defendant was treated not only humanely by those officers, but also with kindness. It is Hornbook law that a confession must be voluntary. To determine whether or not a confession is voluntary, the Court looks to a "totality of the circumstances" to determine if the statement was freely and knowledgeably made by the defendant and the product of his own will. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Intoxication, insane delusions, or mental retardation will not, standing alone, render a confession involuntary. Any of these conditions are relevant issues regarding the suspect's "susceptibility to police coercion, [but] mere examination of the confessant's state of mind can never conclude the due process inquiry." *Colorado v. Connelly*, 479 U.S. 157, 165 (1986). "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Supra*, at 167.

To be sure, defendant was addicted to Oxycontin and his deprivation from that drug during the time of his incarceration was causing him discomfort, possibly even extreme discomfort. Nevertheless, it is clear from listening to the recorded discussion between the defendant and the police officers that defendant was competent and speaking on his own volition. His will was in no way overcome by that of the officers. He was promised nothing in an effort to induce him to confess. To put it succinctly, the proof shows that these officers were polite to defendant, they tended to his physical needs (such as getting him a blanket), and defendant responded freely and appropriately to all questions; there was no evidence to the contrary. There was no coercive police conduct. In summation, the "totality of the circumstances: - indeed, *all* the circumstances - reveal that defendant's confession was utterly voluntary.

It is respectfully recommended that defendant's Motion to Suppress be DENIED.

Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). The objecting party shall procure and file simultaneously with the objections a transcript of any testimony before the Magistrate Judge. If a transcript is not filed simultaneously with the objections, the party filing the objections shall either (1) file a declaration that the transcript was ordered before the objections were filed and the date on which the party expects the transcript to be filed, or (2) affirmatively

state that a transcript of the testimony presented to the Magistrate Judge is not needed for resolution of the objections.] If a party files objections to this report and recommendation, the attorney for that party shall provide a copy of such objections to the opposing counsel on the same day the objections are filed, either by hand-delivery or facsimile transmission. The opposing counsel shall file his/her response to the objections within five business days of the date the objections are filed.

Respectfully submitted,

    s/ Dennis H. Inman
United States Magistrate Judge

.5